[Cite as *State v. Turner*, 2012-Ohio-3368.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No.   97581

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## STEPHEN TURNER

DEFENDANT-APPELLANT

---

## JUDGMENT:
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-552788

**BEFORE:**   Boyle, J., Blackmon, A.J., and Keough, J.

**RELEASED AND JOURNALIZED:**   July 26, 2012

**ATTORNEY FOR APPELLANT**

Matthew C. Bangerter
1360 West 9th Street
Suite 200
Cleveland, Ohio   44113

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:   James M. Rice
Assistant County Prosecutor
8th Floor Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, J.:

{¶1} Defendant-appellant, Stephen Turner, appeals his domestic violence conviction. He raises one assignment of error for our review, arguing that his conviction was against the manifest weight of the evidence. Finding no merit to his appeal, we affirm his conviction.

<u>Procedural History and Factual Background</u>

{¶2} In August 2011, Turner was indicted on one count of felonious assault, in violation of R.C. 2903.11(A)(1), with notice of prior conviction and repeat violent offender specifications, and one count of domestic violence, in violation of R.C. 2919.25, with a furthermore clause that he had previously been convicted of aggravated assault against a family or household member. The trial court bifurcated the repeat violent offender and prior conviction specifications. The following facts were presented to a jury.

{¶3} Paul Little, a paramedic for the city of Cleveland testified that in July 2011, he responded to a call involving "some type of assault." When he arrived, he found the victim, Ola Brown, in an agitated state with what appeared to be an injury to her hand. Little testified that Brown was disheveled and "had dirt on her hair." Little further testified that Brown told him that her boyfriend had thrown a chair at her and that she

tried to block it with her hand. Little also explained on cross-examination that Brown did not appear intoxicated; she "had a steady gait" and "appeared sober." Little filled out an incident report that stated "Pt had dirt on her back from being on the ground, * * * Pt c/o injury to her right little finger secondary to being hit in the hand with a chair by her boyfriend."

{¶4} Officer Orville Taylor testified that when he arrived at the scene, Ola Brown told him that she had been assaulted by her boyfriend. Officer Taylor said that Brown was upset and had an injury to her hand. Officer Taylor testified that Turner was arrested based on statements Brown made to him. Officer Taylor said that neither Brown nor Taylor appeared to be intoxicated.

{¶5} Officer Jerad Schlact testified that when he arrived at the scene, Brown was "hysterical." He observed that Brown had an injury to her hand. Officer Schlact stated that he wrote the incident report after leaving the scene. He said that based on what Ola Brown told him, Turner was arrested for assault and domestic violence.

{¶6} Brown's 911 call, made at 1:43 a.m., was played to the jury. In it, Brown requested police and an ambulance. Brown told the 911 operator: "he broke my finger." When the operator asked who broke her finger, Brown stated, "my old man," whom she then identified as Turner.

{¶7} Brown also gave an audio statement to Detective Dennis Ivey between noon and 1:00 p.m. that same day. Brown's audio statement was also played for the jury. In it, Brown told Detective Ivey that she and Turner had gotten into an argument. Brown

stated that Turner threw a chair at her during the argument. Brown said that the chair hit her hand and broke her finger.

{¶8} Brown also stipulated to her medical records being entered into evidence. In those records, it states "pt assulted by male partner lac to rt pinkie bleeding controlled." The records further indicate that patient "presents with the complaint of pain in her right digit following being hit with a chair * * * at approximately 2:00 a.m." In another part, the records further state: "Pt right handed, was involved in domestic abuse with a known individual, who is know [sic] in police custody."

{¶9} Brown testified that when she made the statements to the 911 operator, the police, and paramedics at the scene, as well as to Detective Ivey, she was under the influence of alcohol and could not remember what happened. She said she told them that Turner threw a chair at her because that is what she assumed happened. But Brown testified that she later remembered that she took the chair and "smash[ed] it to pieces" against a banister, causing her finger to get "caught up in it." Brown testified that she and Turner were back together at the time of trial.

{¶10} On cross-examination, Brown explained that she is an alcoholic and said that sometimes she blacks out. She stated that is what happened that night; she forgot what happened due to the alcohol. She only began to remember a couple weeks later.

{¶11} Detective Dennis Ivey testified that he picked Brown up from the hospital and took her to the police station. Brown gave him her audio statement between noon and 1:00 p.m. Brown signed a form stating that her audio statement was true.

Detective Ivey testified that Brown did not appear to be intoxicated when she gave her statement.

{¶12} The jury found Turner guilty of domestic violence with the furthermore clause that he had previously been convicted of aggravated assault against a family or household member.   The jury found Turner not guilty of felonious assault.

{¶13} The trial court sentenced Turner to jail from July 26, 2011 to October 26, 2011, which he had already served during the pendency of the action, and 18 months of community control sanctions.

Manifest Weight of the Evidence

{¶14} In his sole assignment of error, Turner contends that his conviction is against the manifest weight of the evidence.

{¶15} In *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), the Supreme Court explained:

> Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. * * * Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.   * * * Weight is not a question of mathematics, but depends on its *effect in inducing belief*."   (Emphasis added.)   * * *

> When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony.   * * * "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest

miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

(Internal citations omitted.)

{¶16} Turner claims that "the greater part of the evidence indicates that" he did not break Brown's finger. Turner asserts that "it is the testimony of the victim herself that is most telling." Turner argues that Brown's testimony establishes "in short," that Brown had been drinking, got angry at Turner, and blamed him for her injury out of anger. Turner contends that Brown's testimony, when she was calm and sober, was more credible than what she told the police officers, the detective, doctors, and paramedics, when she was intoxicated.

{¶17} After reviewing the transcript and evidence before us, we conclude that this is not the exceptional case where the jury clearly lost its way and created a manifest miscarriage of justice such that a new trial should be ordered. The paramedic and police officers testified that Brown did not appear intoxicated when they spoke with her around 2:00 a.m. Nothing in the medical reports indicates that Brown was intoxicated. The detective also testified that Brown did not appear to be intoxicated. When Brown gave her audio statement to the detective, stating that Turner threw a chair at her, it was approximately ten to eleven hours after the incident.

{¶18} The jury heard Brown's testimony that her statements to the medical professionals and police were not true, but it chose to believe what the medical professionals and police testified to at trial — that Brown told them on the day of the

incident that Turner threw a chair at her, breaking her finger.

{¶19} Thus, after reviewing the entire record, weighing the evidence and all reasonable inferences, considering the credibility of witnesses and determining whether in resolving conflicts in the evidence, we conclude that the jury did not lose its way. Indeed, the verdict indicates that the jury carefully considered all of the evidence because it found Turner not guilty of felonious assault.

{¶20} Turner's sole assignment of error is overruled.

{¶21} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, JUDGE

PATRICIA ANN BLACKMON, A.J., and
KATHLEEN ANN KEOUGH, J., CONCUR